UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:12-23569-Civ - MIDDLEBROOKS/BRANNON

FILED by _____ D.C.

FEB 13 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

WI-LAN USA, INC. and WI-LAN INC.,

       Plaintiffs

vs.

TELEFONAKTIEBOLAGET LM
ERICSSON and ERICSSON INC.,

       Defendants.

_____/

## DEFENDANTS' STATEMENT OF MATERIAL FACTS

Pursuant to Local Rule 56.1, the defendants, Telefonaktiebolaget LM Ericsson and

Ericsson, Inc. (collectively, "Ericsson"), hereby submit the following Statement of Material

Facts in support of their Motion for Summary Judgment:

1.      Telefonaktiebolaget LM Ericsson ("LME") is a Swedish corporation which,

through its subsidiaries, is in the business of providing telecommunication and data-

communication systems and related services. *See* Declaration of Chris Dunstan ("Decl. of

Dunstan,") ¶ 3 (attached hereto as Exhibit 1).

2.      LME is the ultimate parent company of Ericsson Inc., which oversees LME's

business in the United States. Ericsson Inc.'s core products are antennas, transmitters, switching

systems and other equipment used to build wireless telecommunications networks, and includes

products compliant with UMTS and HSPA standards. *See id.*, ¶ 4.

3.      On February 13, 2008, LME and Wi-LAN Inc. ("Wi-LAN") entered into a Patent

and Conflict Resolution Agreement (the "Agreement"), with an effective date of November 1,

2007. *See* Declaration of Frank Vecella ("Decl. of Vecella"), ¶ 7 & Exh. A (attached hereto as

Exhibit 2).  The consideration received by Wi-LAN under the Agreement included: (i) "the value to WI-LAN of the parties resolving any conflicts the McKool Smith law firm may have in representing WI-LAN..."; and (ii) "...the payment of $100,000 to WI-LAN ...." *See id.*, at Exh. A, p. 1, ¶ 4 & Art. V, § 1.

4.      As part of the Agreement, Wi-LAN agreed to, *inter alia*, grant LME and its affiliates the right to receive a "most-favored" license to the Wi-LAN patent portfolio in the event that certain conditions were met.  Specifically, Article VII, Section 1 of the Agreement (the "MFL Provision") states:

> In the event that Wi-LAN owns or controls the licensing of patents not already addressed under this Agreement and which are infringed or alleged to be infringed by UMTS/HSPA PRODUCTS, WI-LAN hereby agrees that at any time during the TERM of this Agreement, at LME's request, WI-LAN will grant to LME and its AFFILIATES a non-exclusive license to make, have made, use, sell, offer for sale, lease or otherwise dispose of, and import LME PRODUCTS including UMTS/HSPA PRODUCTS and Wi-LAN agrees to grant such a license at most-favored licensee status as compared to any future licensee of WI-LAN.

*See id.*, at Exh. A, Art. VII, § 1.

5.      "AFFILIATE" is defined in the Agreement as including any entities that are directly or indirectly controlling, controlled by, or under common control with a party to the Agreement.  *See id.*, at Exh. A, Art. I, § 2.  LME is a party to the Agreement, *see id.*, at Exh A., p. 1, and LME indirectly controls Ericsson Inc. as an indirect subsidiary of LME.  *See* Decl. of Dunstan, ¶ 4.

6.      The "TERM" of the Agreement is the period of November 1, 2007 through September 3, 2019.  *See* Decl. of Vecella, at Exh. A, Art. I, §§ 4, 7.

7.      The Agreement defines "LME PRODUCTS" as "any products which are sold or licensed by LME or its AFFILIATES." *See id.*, at Exh. A, Art. I, § 6.  The products accused in this lawsuit of infringement are products sold by Ericsson Inc.  *See* Compl., Dkt. No. 1, ¶¶ 19-20.

8.      The Agreement defines "UMTS/HSPA PRODUCTS" as "any PRODUCT complying with the 21–35 series of 3GPP agreed protocols and/or protocol standards issued by other relevant telecommunications standards setting body which include substantially corresponding [sic] to the 21–35 series of 3GPP agreed protocols irrespective of the frequency band (by way of non-limiting example, including the ETSI-125 protocols), as well as any new releases or updates of such protocols." *See* Decl. of Vecella, at Exh. A, at Art. I, § 8.

9.      The Agreement is governed by New York law. *See id.*, Exh. A, at Art. VIII, § 10.

10.      On October 5, 2010, Wi-LAN filed a lawsuit against Ericsson in the United States District Court for the Eastern District of Texas (the "Texas Lawsuit") alleging infringement of U.S. Patent Nos. 6,088,326, 6,195,327, 6,222,819 and 6,381,211 (collectively, the "HSPA Lawsuit Patents"). *See* Decl. of Dunstan, ¶ 7 & Exh. A.

11.      Wi-LAN claims to own the HSPA Lawsuit Patents. *See id.*, at Exh. A, ¶¶ 10-13.

12.      In the Texas Lawsuit, Wi-LAN alleges that Ericsson infringes the HSPA Lawsuit Patents through its sale of one or more products that comply with the 21–35 series of 3GPP agreed protocols. *See id.*, at Exh. A, ¶¶ 22, 27, 38  Specifically, Wi-LAN's complaint in the Texas Lawsuit alleges that "the accused Ericsson products support at least releases 5, 6, and 7 of the 3GPP standard ... Ericsson has been and is now infringing [the Texas Wi-LAN Patents ] ....by making, using, offering for sale, importing, and/or selling, without authority from Wi-LAN, products compliant with the 3GPP standard, including but not limited to RBS-3000, RBS-6000, W30 and W35 ..." *See id.*, at Exh. A, ¶¶ 20, 22, 27, 38.

3

13.     Releases 5, 6 and 7 all fall within the 21–35 series of the 3GPP standard. *See id.,*
¶ 6. The products accused of infringement in the Texas Lawsuit fall within the definition of
UMTS/HSPA PRODUCTS, as that term is defined in the Agreement. *See id.,* ¶ 7.

14.     Wi-LAN has attempted to avoid summary judgment in the Texas Lawsuit by
arguing that the HSPA Lawsuit Patents fall outside the scope of the Agreement. *See id.,* ¶ 8 &
Exh. B.

15.     By correspondence dated May 23, 2011, LME placed Wi-LAN on notice that
LME was invoking its rights under the MFL Provision to receive, on its behalf and on behalf of
its affiliates, a license at the same terms as Wi-LAN's "most-favored" licensee. In the same
correspondence, Ericsson also requested further information regarding the patent licenses that
had been granted by Wi-LAN to third parties. *See id.,* ¶ 9 & Exh. C.

16.     Wi-LAN did not respond to LME's May 23, 2011 correspondence. *See id.,* ¶ 9.

17.     Almost two years after entering into the Agreement, Wi-LAN entered into a
"Patent License Agreement" with BelAir Networks, Inc. ("BelAir") dated December 30, 2009
(the "BelAir License"). *See id.,* ¶ 10 & Exh. D. LME was not aware of the BelAir License at the
time it sent the May 23, 2011 correspondence. *See id.,* ¶ 10.

18.     Pursuant to the BelAir License, Wi-LAN granted BelAir:

> [D]uring the Term, non-exclusive, non-assignable ... world-wide,
> irrevocable (to the extent allowed hereunder) licenses under the
> Licensed Patents to make, have made, import, use, lease, offer for
> sale, sell, transfer and/or otherwise dispose of Subject Products, in
> each case with no right to grant sublicenses.

*See id.,* at Exh. D, § 1.1.

19.     The "Term" of the BelAir License runs through December 30, 2019. *See id.,* Exh.
D, at Schedule A.

#12358962_v3

20.     Pursuant to Section 3.1 of the BelAir Agreement, the Term may be extended to December 30, 2029 upon the unilateral election of BelAir. *See id.*, at Exh. D, § 3.1.

21.     The term "Licensed Patents" is defined under the BelAir License to include every patent in the Wi-LAN portfolio with the exception of certain patents enumerated in Schedule B. *See id.*, at Exh. D, at Schedules A & B.  The term "Subject Products" is defined under the BelAir License to include "any and all products, components or devices" sold by BelAir that "in any way whatsoever infringes any invention(s) claimed in any Licensed Patent ...", with the exception of certain digital subscriber line products. *See id.*, at Exh. D, at Schedule A.

22.     Upon Ericsson's discovery of the Bel-Air License, LME sent a second letter to Wi-LAN on November 8, 2012 reiterating LME's exercise of rights under the MFL Provision, and requesting specifically that Wi-LAN grant LME and its affiliates a license containing the same terms as the BelAir License. *See id.*, ¶ 11 & Exh. E.

23.     On February 1, 2013, Ericsson sent a third letter to Wi-LAN reiterating its demand to Wi-LAN that it comply with the MFL Provision by granting LME and its affiliates a license containing the same terms as the BelAir License. *See id.*, ¶ 12 & Exh. F.

24.     To date, Wi-LAN has failed and refused to grant LME a license on terms that are, at minimum, the same as those in the Bel-Air License. *See id.*, ¶ 13.

25.     Wi-LAN initiated the instant lawsuit against Ericsson on October 1, 2012, alleging infringement of U.S. Patent Nos. 8,027,298 (the "'298 Patent"), 8,249,014 (the "014 Patent"), and 8,229,437 (the "'437 Patent") (collectively, the "Patents-In-Suit"). *See* Complaint, Dkt. No. 1, ¶¶ 21-32.

#12358962_v3

26.     Each of the Patents-In-Suit falls within the definition of "Licensed Patents" under the BelAir License because they are not listed in Schedule B to that license.  *Compare id.*, ¶¶ 21-32 *with* Decl. of Dunstan, at Exh. D, at Schedule B.

27.     On December 7, 2012, Ericsson filed an Answer and Counterclaim to Wi-LAN's complaint.  Count II of Ericsson's Counterclaim alleges that Wi-LAN's refusal to provide Ericsson with a license on terms equivalent to the BelAir License represents a breach of the Agreement.  Count IV of Ericsson's Counterclaim seeks a declaratory judgment that Ericsson is entitled to a license pursuant to the MFL Provision.  *See* Counterclaims of Defendants Telefonaktiebolaget LM Ericsson and Ericsson, Inc., Dkt. No. 16, ¶¶ 23-30, 40-48.

28.     Notwithstanding the fact that the Patents-In-Suit are not valid and not infringed, for the avoidance of costs associated with this litigation and for purposes of the Defendants' Motion for Summary Judgment only, Ericsson is prepared to: (1) accept the terms of the BelAir License as Wi'LAN's "most-favored" licensee under the MFL Provision; and (2) tender the payment of $300,000 Canadian dollars required by Section 3.1 of the BelAir License.  *See* Decl. of Dunstan, ¶ 14.

#12358962_v3

Dated: February 13, 2013

Respectfully Submitted,

George E. Schulz, Jr.
Florida Bar No. 169507
Email: buddy.schulz@hklaw.com
HOLLAND & KNIGHT LLP
50 North Laura Street, Suite 3900
Jacksonville, FL  32202
Telephone:   (904)353-2000
Facsimile:   (904)358-1872
Joshua C. Krumholz, Esq.
(*pro hac vice*)
Email: joshua.krumholz@hklaw.com
Jacob K. Baron, Esq.
(*pro hac vice*)
Email: jacob.baron@hklaw.com
Jacob W. S. Schneider, Esq.
(*pro hac vice*)
Email: jacob.schneider@hklaw.com
Nash Zogaib, Esq.
(*pro hac vice application*)
Email: nash.zogaib@hklaw.com
HOLLAND & KNIGHT LLP
10 Saint James Avenue; 11th Floor
Boston, MA  02116
Telephone:   (617)523-2700
Facsimile:   (617)523-6850
*Attorneys for Telefonaktiebolaget LM
Ericsson and Ericsson Inc.*

7

#12358962_v2

## Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by electronic and US mail on February 13, 2013 on all counsel or parties of record on the Service List below.

## SERVICE LIST

Constance S. Huttner
Email:  chuttner@velaw.com
Vinson & Elkins LLP
666 Fifth Avenue, 26th Floor
New York, NY  10103-0040
David J. Tobin
Email:  dtobin@velaw.com
Purav Jesrani
Email: pjesrani@velaw.com
Vinson &Elkins, LLP
2001 Ross Avenue, Suite 3700
Dallas, TX  75201

Jay Brian Shapiro
Email:  jshapiro@stearnsweaver.com
Samuel Olds Patmore
Email:  spatmore@stearnsweaver.com
Stearns Weaver Miller Weissler Alhadeff & Sitterson
Museum Tower
150 W Flagler Street, Suite 2200
Miami, FL  33130
*Attorneys for Plaintiffs,*
*Wi-LAN USA, Inc. and Wi-LAN Inc.*

#12358962_v2